# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

Case No. 18-10113-EFM

COREY R. DETTER,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Suppress (Doc. 26). Corey Detter asks the Court to exclude all evidence related to his January 4, 2018 arrest, arguing that the preceding traffic-stop and search violated his Fourth Amendment rights. The Court concludes that the stop, search, and arrest were lawful; therefore, Detter's Fourth Amendment rights were not violated. For those and the following reasons, the Court denies the Motion.

### I.    Factual and Procedural Background

Early in the morning on January 4, 2018, Sergeant Bachar of the Great Bend Police Department received a call from Larry Marshall about an impounded truck that contained methamphetamine and a large amount of currency. Bachar had previously identified the truck's

owner as Kari McBride, a known drug trafficker in Great Bend. Marshall informed Bachar that Detter and McBride had arrived at the impoundment lot in a white car driven by Sierra Flax. Detter inquired about the truck and then left with Flax and McBride. While on the phone with Marshall, Bachar identified a white car matching Marshall's description and began to follow it. Bachar called Corporal Shane Becker for assistance, and Becker also began following Flax's car. When Flax turned under a street light, Bachar noticed that her car's window-tint appeared darker than legally permissible. Bachar initiated a traffic stop for that violation.

During the traffic stop, Bachar confirmed the identities of Flax, Detter, and McBride. Bachar relayed this information to dispatch and confirmed that Flax, Detter, and McBride had criminal records.[1] Becker then had his canine perform a narcotics sniff of the car, resulting in an alert to the presence of narcotics. At this point, Becker asked Detter to exit the car, Detter complied, and Becker searched him. During the search, Becker discovered a wad of counterfeit currency in Detter's pant pocket and a syringe in his boot. Becker then arrested Detter and escorted him to his police car. On the way to the police station, Detter voluntarily waived his *Miranda* rights and made several incriminating statements to Becker.

Detter now moves to suppress all the evidence stemming from this incident, arguing that the traffic stop and subsequent search violated his Fourth Amendment rights.

## II. Legal Standard

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."[2]

---

[1] Detter's record included one prior instance of firearm possession.

[2] U.S. CONST. amend. IV.

Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure."[3] If a search or seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits the admission of any subsequently obtained evidence, including information, objects, or statements.[4] Searches must be authorized by a warrant unless an exception to the warrant requirement applies.[5] The government bears the burden to prove that a warrantless search or seizure was justified.[6]

### III. Analysis

Detter argues that the Court should exclude all evidence related to his January 4, 2018 arrest because: (1) the traffic stop was unlawful; (2) the *Terry* frisk was unlawful; and (3) the eventual arrest lacked probable cause and was therefore unlawful. The Court will address each of these arguments in turn.

### A. The Traffic Stop was Lawful Because It was Based Upon a Reasonable Suspicion of a Window-Tint Violation

Federal courts acknowledge three types of law enforcement encounters: voluntary encounters, investigative detentions, and arrests.[7] A traffic stop is treated as an investigative detention.[8] Investigative detentions are governed by the standards established in *Terry v. Ohio*.[9]

---

[3] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[4] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

[5] *California v. Carney*, 471 U.S. 386, 390 (1985).

[6] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (citations omitted).

[7] *United States v. Brown*, 496 F.3d 1070, 1074 (10th Cir. 2007) (citations omitted).

[8] *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005).

[9] 392 U.S. 1 (1968).

In *Terry*, the Supreme Court held that an investigatory detention need only be supported by a reasonable suspicion of criminal activity, rather than the higher standard of probable cause.[10] Reasonable suspicion for a *Terry* stop is subject to a two-part analysis. The stop is reasonable if it is (1) "justified at its inception," and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."[11] A detention is justified at its inception if the "specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion that an offense is being committed."[12]

An observed traffic violation provides the articulable facts necessary to give rise to a reasonable suspicion that a person has committed a crime.[13] As such, the resulting traffic stop is justified at inception.[14] Under Kansas law, the "total light transmission" of a car's windows "shall not be less than 35%."[15] Multiple courts have held that an officer's belief that a car's windows are excessively tinted creates a reasonable suspicion sufficient to initiate a lawful traffic stop.[16] Furthermore, an officer's suspicion of a window tint violation need not be *correct*, it need only be reasonable.[17]

---

[10] *Id*. at 30.

[11] *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citations and quotations omitted).

[12] *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990).

[13] *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

[14] *Id*.

[15] K.S.A. § 8-1749a (2010).

[16] *See United State v. Ramirez*, 86 F. App'x 384, 386 (10th Cir. 2004); *see also United States v. Bautista-Meza*, 2014 WL 2158408, at *3 (D. Kan. May 23, 2014).

[17] *See United States v. Beltran-Palafox*, 731 F. Supp. 2d 1126, 1146 (D. Kan. 2010) (stating "reasonable suspicion may be supported by an 'objectively reasonable' good faith belief even if premised on factual error").

The Court concludes that Bachar stopped Flax's car based upon the reasonable suspicion that a traffic violation had occurred. When Flax turned under the street light, both that light and Bachar's headlights illuminated her car's windows, leading Bachar to believe that the windows were darker than legally permissible. Detter argues that since the eventual test revealed that the windows transmitted 34% of light and since the tint meter has a margin of error of 2%, the windows might have been within the legal limit. However, Detter's reasoning misconstrues the law. The law does not require reasonable suspicion to be subsequently confirmed as *accurate*; it merely requires the suspicion to be reasonable at its inception. Besides, Detter's reasoning equally weighs against him: the 2% variance implies that Flax's windows might have transmitted only 32% of light, even further below the 35% statutory limit. Although *legally* unnecessary, the fact that the test subsequently revealed that the windows transmitted 32-36% of light *logically* supports the conclusion that Bachar's suspicion was reasonable at inception. In any event, Bachar reasonably suspected that a traffic violation was occurring when he noticed that Flax's windows appeared to be darker than permissible.

Finally, the traffic stop was reasonably related in scope to the circumstances that justified it in the first place. During the process of investigating the window tint violation, Bachar discovered the identities of Detter, Flax, and McBride. After relaying that information to dispatch, the officers learned of the criminal records of the three suspects. The routine canine sniff of the car also alerted Bachar and Becker to the presence of narcotics. All of these events were done in a reasonable time period, and they sequentially stemmed from, and were well within the scope of, Bachar's lawful traffic stop.

The Court concludes that Bachar stopped the car based upon the reasonable suspicion that a traffic violation was occurring. Therefore, the traffic stop did not violate Detter's Fourth Amendment rights.

**B.    The Search of Detter was a Valid Search Incident to a Lawful Arrest**

The Government argues two theories as to why Becker's search of Detter was lawful. First, the Government argues that Becker conducted a lawful *Terry* frisk of Detter based on a reasonable suspicion that Detter was armed and dangerous. Next, the Government argues that the eventual arrest of Detter was based on probable cause and therefore lawful, and that the resulting search incident to that arrest was also lawful. The Court will consider both arguments in turn.

*1.    The Terry Frisk was Not Justified by a Reasonable Suspicion that Detter was Armed and Dangerous*

During a traffic stop, an officer may order someone to exit a vehicle to conduct a "*Terry* frisk" if the officer has reasonable suspicion to believe the person is armed and dangerous. "Being armed does not ineluctably equate with dangerousness."[18] Before law enforcement "places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so."[19] Furthermore, "[in] the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."[20] A criminal history alone does not give rise to the reasonable suspicion

---

[18] *United States v. House*, 463 F. App'x 783, 788 (10th Cir. 2012).

[19] *Sibron v. New York*, 392 U.S. 40, 64 (1968).

[20] *Id*.

that a person is armed and dangerous.[21] The purpose of a *Terry* frisk is not to discover evidence of a crime, but to allow the officer to proceed "without fear of violence."[22]

The Government argues that Becker had a reasonable suspicion that Detter was armed and dangerous. It argues that Detter's record of firearm possession, mixed with the mere suspicion of his involvement in drug trafficking, gave Becker enough facts to reasonably suspect that Detter was armed and dangerous in this instance. As a result, the Government argues, Becker was justified in conducting a *Terry* frisk of Detter to ensure he was unarmed.[23] The Court is not convinced by these arguments for the following reasons.

The facts of this case differ from those of the cases cited by the parties. In *Hammond*, the defendant had multiple convictions of firearm possession as well as a record of involvement in a violent gang.[24] In *Rice*, the defendant had an extensive history of violent crimes as well as violent use of firearms.[25] Based on those facts, the Tenth Circuit in both *Hammond* and *Rice* held that the officers had reasonable suspicion that the defendants were armed and dangerous.[26]

---

[21] *United States v. Hammond*, 890 F.3d 901, 906 (10th Cir. 2018); *see also United States v. Rice*, 483 F.3d 1079, 1085 (10th Cir. 2007).

[22] *Hammond*, 890 F.3d at 905.

[23] The Court acknowledges that officers frequently encounter contentious situations that appear harmless only after the fact; as such, the Court proceeds cautiously with this issue to prevent hindsight bias from creeping into its reasoning.

[24] *Id*. at 903–04.

[25] 483 F.3d at 1081–82.

[26] Other cases seem to indicate that mere suspicion of drug trafficking gives rise to a reasonable suspicion that the defendant is armed and dangerous. However, those cases typically have at least one other factor contributing to the defendant's propensity for violence. *See United States v. Garcia*, 459 F.3d 1059, 1065 (10th Cir. 2006) (concluding that a *Terry* frisk inside a home was permissible because the defendant lived in the home suspected violent gang members and drug traffickers); *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004) (concluding that a *Terry* frisk was permissible because the defendant was reasonably suspected to be involved with drug dealing, kidnapping, or prostitution).

Unlike the defendants in *Hammond* and *Rice*, Detter had no prior record of *using* weapons violently. Nor did the officers have a specific reason to believe Detter would react violently in this situation. Furthermore, the officers had no special reason to believe that Detter was armed at the time of the traffic stop. Detter lacks a history of involvement in violent gangs and has never been convicted of a violent crime. A single instance of past firearm possession does not give rise to the reasonable suspicion that Detter was armed and dangerous in this situation. As such, the Court holds that the *Terry* frisk of Detter was unlawful.

2.  *The Search of Detter was Incident to His Lawful Arrest*

Under one of the exceptions to the Fourth Amendment warrant requirement, officers may conduct a warrantless search of a person when it is incident to a lawful arrest.[27] A search need not take place after an arrest in order to constitute a valid search incident to lawful arrest.[28] A warrantless search preceding an arrest is a valid search incident to lawful arrest as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search.[29] "Whether or not the officer intended to actually arrest the defendant at the time of the search is immaterial to this two-part inquiry."[30] Under this inquiry, an arrest is "legitimate" if it is based on probable cause.[31]

"Probable cause to arrest exists when an officer has learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an

---

[27] *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998).

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

offense has been or is being committed by the person arrested."[32] Notably, a canine alert provides probable cause for searches and seizures.[33] Two cases in particular, *Maryland v. Pringle*[34] and *United States v. Klinginsmith*,[35] govern the issue of whether there was probable cause to arrest Detter as a passenger.

In *Pringle*,[36] the Supreme Court held that an arrest of a front-seat passenger was lawful after police searched the vehicle and found drugs under the back-seat armrest. The court explained that to "determine whether an officer had probable cause to make an arrest, a court must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."[37] In *Pringle*, the defendant was riding as a passenger in a car with two other men. Officers stopped the vehicle and obtained the driver's permission to search it. The officers discovered a wad of money in the glove compartment and a bag of cocaine under the back-seat armrest. The officers then promptly arrested the defendant, the driver, and the other passenger. The court concluded that "it is an entirely reasonable inference from the facts here that any or all of the car's occupants had knowledge of, and exercised dominion and control over, the cocaine, a reasonable officer could

---

[32] *Anchondo*, 156 F.3d at 1045 (citing *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir. 1991)).

[33] *Id*.

[34] 540 U.S. 366 (2003).

[35] 25 F.3d 1507, 1508 (10th Cir. 1994), *cert. denied*, 513 U.S. 1059 (1994).

[36] *Pringle*, 540 U.S. 366.

[37] *Id*. at 371 (citations and quotations omitted).

conclude that there was probable cause to believe [defendant] committed the crime of possession of cocaine, either solely or jointly."[38]

Similar to the Supreme Court in *Pringle*, the 10th Circuit in *Klinginsmith* held that evidence obtained pursuant to a warrantless arrest of the passenger of a car was admissible.[39] The court concluded that a passenger can be arrested based on probable cause arising out of a canine alert to the vehicle in general. In *Klinginsmith*, the passenger initially consented to the search of the vehicle before the canine alerted. However, the search occurred after the alert, and the court ruled that the consent was therefore unnecessary. The arrest also occurred immediately after the canine alert, but before the officers searched the car. Finally, the court held that the car could have been stopped based on "reasonable suspicion" under *Terry* and that the subsequent canine alert would have given rise to probable cause to arrest the driver and passenger.[40]

The Court concludes that Becker's search of Detter was a valid search incident to a lawful arrest. Bachar knew that McBride was a local drug trafficker. The officers were aware of Detter's past drug use and suspected him of drug trafficking with McBride. The officers also knew of Detter's suspicious interest in the impounded truck, which had contained a large amount of methamphetamine. These facts, under the totality of the circumstances, justified the officers' inferences that any or all the vehicle occupants "had knowledge of, and exercised dominion and control over" the narcotics, and were therefore jointly involved in a common, illegal enterprise. As a result, after the canine alert, Becker had probable cause to lawfully arrest Detter. Although

---

[38] *Id*. at 372.

[39] *Klinginsmith*, 25 F.3d at 1508.

[40] *Id*. at 1510.

Becker searched Detter before formally arresting him, the search and the arrest were close enough in time to constitute a valid search incident to a lawful arrest. As a result, the Court concludes that Detter's Fourth Amendment rights were not violated, and the Court will not exclude the evidence obtained from the search.

C.  **The Evidence Obtained from Detter would have Inevitably been Discovered**

Lastly, the Government argues that the counterfeit money found in Detter's pocket should not be excluded because it would have been inevitably discovered after Detter's lawful arrest. "The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it."[41] The Government carries the burden to prove, by a preponderance of the evidence, that the counterfeit money seized from Detter would have inevitably been discovered.[42] For the following reasons, the Court concludes that the Government has carried its burden.

As previously explained, immediately after the canine alert, the officers had probable cause to arrest Detter. At that point, they could have arrested Detter and escorted him to the police station. Although Becker's search of Detter uncovered the counterfeit currency and syringe, the canine alert to the presence of narcotics, which occurred before the search of Detter, gave Becker an independent source of probable cause to arrest Detter. Whether Becker subjectively intended to arrest Detter prior to the search is legally irrelevant; what matters is that prior to the search, Becker had probable cause to arrest Detter. Had Becker *not* searched Detter at the scene of the traffic stop, but instead arrested him and taken him to the police station, officers at the station

---

[41] *United States v. Martinez*, 512 F.3d 1268, 1273 (10th Cir. 2008) (citations and quotations omitted).

[42] *See United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005).

would have then searched Detter, uncovering the counterfeit currency and syringe. The Court concludes that the Government has carried its burden of proof regarding inevitable discovery. Since the evidence pertinent to this case would have inevitably been discovered from an independently lawful investigation, the Court will not exclude that evidence.

The Court concludes that the initial traffic stop of Flax's car was lawfully supported by a reasonable suspicion that a traffic violation had occurred. Although Becker's subsequent *Terry* frisk of Detter was not supported by the reasonable suspicion that Detter was armed and dangerous, the Court nevertheless concludes that the search was lawful. The canine alert gave rise to the probable cause necessary to lawfully arrest Detter. Regardless, if Becker searched Detter then and there, as a search incident to a lawful arrest, or otherwise escorted him to the police station where the evidence would have inevitably been discovered, an exception to the Fourth Amendment exclusionary rule applies to this case. Detter has therefore unsuccessfully alleged a violation of his Fourth Amendment rights.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 26) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 14th day of March, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE